**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AKIL ASIM JOHNSON,                     )
                                       )
                  Plaintiff,           )          Civil Action No. 2:23-cv-1686
                                       )
         v.                            )
                                       )          Magistrate Judge Patricia L. Dodge
MICHELLE HENRY, Attorney General,      )
et al.,                                )
                                       )
                  Defendants.          )

## MEMORANDUM OPINION

Plaintiff Akil Asim Johnson, a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") at SCI Somerset, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against twelve defendants who are employees of the DOC and the Pennsylvania Office of the Attorney General. Pending before the Court[1] is Defendants' Motion to Dismiss Complaint for Failure to State a Claim. (ECF No. 25.)

For the reasons that follow, Defendants' motion will be granted.

### I.    **Procedural History**

Plaintiff's Complaint was received in September 2023. After he corrected certain procedural deficiencies, the Complaint was docketed on October 25, 2023. (ECF No. 11). Defendants filed the instant motion and a brief in support on January 16, 2024. (ECF Nos. 25 and 26). Plaintiff filed a response on August 15, 2024. (ECF No. 48.) The motion is ripe for disposition.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

II.    **Factual Allegations**

Plaintiff's claims appear to be centered on his allegedly improper confinement in the Intensive Management Unit ("IMU") in administrative custody ("AC") while at SCI Greene. Specifically, he alleges that starting on September 28, 2020, he was "illegally confined" at SCI Greene and was "held hostage" and "kidnapped" by all of the defendants. (ECF No. 11 ¶ 24.)

On September 14, 2021, Plaintiff received a report from Daniel Coulehan, a Unit Manager, that stated that per Program Review Committee ("PRC") members Stephen Buzas, Maureen Malanoski, Martin Switzer, C. Parker, M. Dialesandro, and Eric Hintemeyer, Plaintiff had received a "time cut" on his time in disciplinary custody due to misconduct. (*Id.* ¶¶ 6, 9.) The report further stated that Plaintiff either was in danger from other persons and could not be protected by alternative measures and/or created danger to other persons who could not be protected from him by alternative measures. (*Id.* ¶ 7.) As a result, Plaintiff was assigned to AC status[2] in the IMU and was housed in the "old death row block." (*Id.* ¶¶ 7, 22.) He alleges that these actions were retaliatory and conducted by all defendants, but he does not allege the basis for this conclusion.

Plaintiff appealed the misconduct and received responses to his appeals from Michael Zaken and Zachary J. Moslak. (*Id.* ¶¶ 11, 12.) Plaintiff also filed a grievance concerning his placement in the IMU, to which Grievance Coordinator Mindy Andretti responded. (*Id.* ¶ 16.) He appealed the denial of this grievance to Zaken, who also denied it. (*Id.* ¶¶ 17, 18.) He appealed that denial to Dorina Varner, Chief Grievance Officer. (*Id.* ¶ 19.) Keri Moore responded for Varner. (*Id.* ¶ 20.)

---

[2] The Court takes judicial notice of DOC policy DC-ADM 802, which is publicly available and which Plaintiff references in his Complaint. As stated in this policy, "AC" status is a classification for inmates whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility. (DC-ADM 802 § III.)

On September 14, 2021, and September 21, 2021, Plaintiff had a hearing before Coulehan and PRC Committee members Buzas, Malanoski, Switzer, Parker, Dialesandro, and Hintemeyer concerning his placement in the IMU in solitary confinement. (*Id.* ¶ 55.) He also received a "summary denial from general population" on January 7, 2022, March 3, 2022, and March 8, 2022. (*Id.* ¶ 52.) On the latter date, he was seen by the PRC and was told that he could begin the IMU program. (*Id.* ¶ 14.)

While in the IMU, Plaintiff alleges that he was in a solitary confinement cell for 23 hours per day on weekdays and 24 hours per day on weekends. (*Id.* ¶ 36.) He was permitted outdoor exercise in a 15-square-foot cage one hour per day on weekdays. (*Id.* ¶ 37.) He was denied daily phone calls and all visits. (*Id.* ¶¶ 38-39.) His food portions were reduced and served on dirty trays. (*Id.* ¶ 41.) He was denied access to the law library and legal materials. (*Id.* ¶ 42.) He was also denied use of a radio or a television and was prevented from socializing with other prisoners. (*Id.* ¶ 44.) According to the Complaint, although he required mental health treatment and medical treatment, treatment was denied.  The length of his confinement in the IMU at SCI Greene is not stated in the Complaint.

Plaintiff claims to suffer from anxiety, depression, and post-traumatic stress disorder. (*Id.* ¶ 43.) He alleges that the conditions of solitary confinement exacerbated these conditions, and he has developed other symptoms as well. (*Id.*)

Plaintiff is no longer incarcerated at SCI Greene. When his Complaint was received by the Clerk of Court in September 2023, he was already housed at SCI Camp Hill, and he has since been transferred to SCI Somerset.

III.   **Legal Standard**

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

The Supreme Court has stated that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

IV.   **Discussion**

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not itself create any substantive rights; it simply provides a cause of action that allows the plaintiff to vindicate rights that have already been secured. *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

Plaintiff alleges violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments against all defendants in their individual and official capacities. His claims appear to arise out of his placement and subsequent housing in administrative custody following the imposition of a misconduct and a determination by prison officials that he could not remain in the general population.

Defendants first argue that Plaintiff's Complaint fails to meet the pleading standard of Federal Rule of Civil Procedure 8(d)(1), because its allegations are not "simple, concise, and direct," as required. While in many respects this characterization is accurate, the Court has reviewed the Complaint in detail and is able to discern the nature of at least some of the claims that Plaintiff appears to assert.

Defendants also argue that Plaintiff make general claims of wrongful conduct, doing little to put them on notice of what exactly his claims are, against whom these claims are, and upon which grounds they rest. This characterization is also well-taken and will be further addressed herein.

### A.  Official Capacity Claims

Plaintiff has brought claims against all of the defendants in their individual and official capacities. (ECF No. 11 at 3.) Defendants argue that because they are employees of the DOC and the Commonwealth of Pennsylvania, all claims against them in their official capacities are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment. (ECF No. 26 at 7-8.) Defendants are correct.

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "Because the Pennsylvania DOC

is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

Further, claims against Defendants in their official capacities are legally claims against the Commonwealth of Pennsylvania, and the Commonwealth is not a person that can be sued under 42 U.S.C. § 1983, even if the Eleventh Amendment permitted this Court to exercise jurisdiction over the claims. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

Accordingly, the § 1983 claims against all Defendants in their official capacities will be dismissed with prejudice.

      B.  <u>First Amendment Retaliation Claim</u>

To succeed on a claim for retaliation under the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff appears to allege that misconducts were asserted against him as retaliation for his exercise of rights when he submitted grievances to complain about his conditions of confinement. Initially, it must be noted that the Complaint references a grievance dated December 21, 2021, about his "illegal confinement" and being forced into the IMU. While asserting a grievance is a protected activity, Plaintiff fails to plead the remaining elements of First Amendment retaliation claim. Simply put, there are no allegations of retaliatory conduct **after** he grieved the conditions of confinement about which he complains in this lawsuit. He had already been issued a misconduct and placed in administrative custody by the time he filed a grievance about his confinement.

Moreover, his vague and bald assertions that all Defendants retaliated against him because he asserted other (unnamed) grievances about a "pattern of lies and fabrication and falsifying of all other type [sic] of other misconduct reports" (*id.* ¶ 58) fails to state a claim for retaliation. Plaintiff does not specify the grievances to which he refers, the timing of these grievances, or their subject matter. Moreover, simply alleging that falsification and lies then occurred from "all defendants" falls substantially short of pleading retaliatory conduct by any of the defendants. Plaintiff also fails to plead that any of the defendants other than those who addressed his identified grievance were even aware of his protected conduct. And notably, based upon the facts alleged, the mere denial of a grievance by those defendants does not support a claim of retaliation. *See Owens v. Coleman*, 629 Fed. Appx. 163, 167 (3d Cir. 2015) ("The denial of grievances is not an 'adverse action' for retaliation purposes.'") In short, because there are no factual allegations in his Complaint that support Plaintiff's retaliation claim, it will be dismissed without prejudice.

### C. Fourth Amendment Claim

Defendants argue that Plaintiff fails to allege any factual basis for a Fourth Amendment claim. (ECF No. 26 at 18-19.) In opposition to the motion to dismiss, Plaintiff asserts that his property was removed from his cell and that he was placed on "paper restriction." (ECF No. 48 at 7.) In his Complaint, Plaintiff alleges that in general population, he was permitted to have a word processor, a television, a radio, a cassette player, a tablet, a keyboard, legal papers, books, and personal papers. (ECF No. 11 ¶ 28.) Presumably, this is the property he claims have been removed and to which he no longer had access.

As Defendants correctly assert, the Fourth Amendment is not applicable to the contents of a prisoner's cell. *Barndt v. Wenerowicz*, 698 Fed. Appx. 673 (3d Cir. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 536 (1984)).[3] Accordingly, this claim will be dismissed with prejudice.

### D. Fifth Amendment Claim

Plaintiff concedes that his claim under the Fifth Amendment should be dismissed. (ECF No. 48 at 7.) Accordingly, this claim will be dismissed with prejudice.

### E. Eighth Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The Eighth Amendment does not, however, require prisons to be comfortable. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citing *Rhodes*, 452 U.S. at 349). As explained by the Third Circuit, because the prohibition "is directed only toward 'punishment,' it applies only to deprivations that constitute an 'unnecessary *and wanton* infliction of pain, including 'those that are 'totally without penological justification.'" *Id.* at 372 (emphasis in original).

To succeed on a claim brought under the Eighth Amendment, a prisoner must show: (1) that they were subjected to a deprivation that was "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) that prison officials acted with "deliberate indifference to the prisoner's . . . needs," which occurs only if the official "knows of and disregards an excessive risk to inmate

---

[3] Further, there is no viable due process claim in this regard because the availability of a post-deprivation grievance procedure afforded sufficient due process in connection with any confiscated property. *See Barndt*, 698 Fed. Appx. at 678.

health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Whether the harm is objectively serious is measured by "whether it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (emphasis in original).

To satisfy the objective prong of this test, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana v. Fed. Bureau of Prisons*, 934 at 373 (quoting *Farmer*, 511 U.S. at 834). To satisfy the subjective prong of the Eighth Amendment test, an inmate must show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847). The inmate "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-43) (internal quotation marks omitted). In evaluating the subjective prong of the Eighth Amendment test, courts also should consider whether officials "had a legitimate penological purpose" behind their conduct. *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018).

While not clear from a review of the Complaint, it appears that Plaintiff is asserting two issues regarding the Eighth Amendment: that the conditions of his confinement were cruel and unusual, and that he was deprived of needed mental health and medical care.

With respect to the conditions of his confinement, Plaintiff alleges that all Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by placing

him and continuing him on AC status in the IMU. Plaintiff claims that the conditions in which he was housed constitute unconstitutional solitary confinement.

Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed because he has no constitutional right to be celled in a particular place, his placement on AC does not violate his Eighth Amendment rights, and he has not supported his claim that he is being housed illegally with any factual allegations.

Plaintiff's conditions of confinement claim relates to his allegedly illegal housing in the IMU on AC status for an undefined period of time. Plaintiff alleges that he was in a solitary confinement cell for 23 hours per day on weekdays and 24 hours per day on weekends and was only allowed to exercise in a 15-square-foot cage one hour per day on weekdays. He was denied daily phone calls and all visits. His food portions were reduced and served on dirty trays. He was denied access to the law library and legal materials, as well as the use of a radio or a television, and was prevented from socializing with other prisoners.

The Supreme Court has held that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Placement in an IMU alone does not violate the Eighth Amendment. *See Williams v. Armstrong*, 566 Fed. Appx. 106, 109 (3d Cir. 2014) (Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities,"); *Griffin,* 112 F.3d at 709; *Gibson v. Lynch*, 652 F.2d 348, 352 (3d Cir. 1981). Nor does mere placement of an inmate on AC status alone violate the Eighth Amendment. *See Bramble*, 2022 WL 55021, at *7; *Booze v. Wetzel*, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014).

The facts alleged in the Complaint fail to support Plaintiff's claim that he was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 835. "Prison officials must

ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (citation omitted). There is no evidence of record that Plaintiff did not receive basic necessities. He does not contend that he was unable to shower, did not receive adequate toiletries or clothing, did not receive food, or that the cell in which he was housed had persistent unsanitary or unsafe conditions. Moreover, while being housed in solitary confinement over an unconstitutional period of time can state a claim under the Eighth Amendment, the facts pleaded in the Complaint fail to support such a claim because the length of his confinement in the IMU at SCI Greene is not stated in the Complaint.

In addition, Plaintiff has failed to sufficiently plead facts to support specific conduct that could represent deliberate indifference on the part of any Defendant. The Third Circuit has held that prison officials act with deliberate indifference when they "both know of and disregard an excessive risk to inmate health or safety. The…element of deliberate indifference is subjective, not objective…meaning that the offical must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Mammana*, 934 F.3d at 373 (citing *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005)). A prison official may act with deliberate indifference if he "had a reasonable opportunity to intervene and simply refused to do so." *Ricks,* 891 F.3d at 479 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002)).

Plaintiff asserts his claim in a conclusory fashion against all Defendants. Blanket broad and general allegations that reference all Defendants as a group are insufficient to plead the personal involvement of each defendant named in the Complaint. Plaintiff has thus failed to sufficiently plead facts that could reflect deliberate indifference on the part of any Defendant.

As it relates to his allegations about his mental health and medical treatment, Plaintiff summarily asserts that he was denied medical treatment, but he fails to provide any facts to support

this conclusion. With respect to his mental health, he cites to DOC policies about mental health assessments and claims that he did not receive them despite having mental health issues. However, he neither identifies a Defendant who allegedly failed to treat him nor sufficiently pleads facts to support specific conduct that could represent deliberate indifference on the part of any Defendant.

For these reasons, Plaintiff's Eighth Amendment claim should be dismissed without prejudice and with leave to amend.

### F. Fourteenth Amendment Claims

#### 1. Due Process

In order to state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)). In the prison context, deprivation of a legally cognizable liberty interest occurs when the prison imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In such a situation, due process generally requires prison officials to provide the inmate notice and opportunity to respond prior to the triggering event. *Shoats v. Horn*, 213 F.3d 140, 144-45 (3d Cir. 2000) (citing *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Plaintiff asserts that his removal from general population was in violation of his due process rights. (ECF No. 11 ¶ 52.) Defendants argue that no due process violation occurred because Plaintiff did not have a liberty interest that could be violated by moving him from general population. (ECF No. 26 at 15-17.) Indeed, a prisoner has no constitutional right "to be confined

in any particular housing unit in a prison." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015).

Further, Defendants argue, Plaintiff had access to the grievance system and the misconduct appeal

process. (ECF No. 26 at 17.) Moreover, as Plaintiff acknowledges, he had proceedings after he

was assigned to AC status on at least two occasions, September 21, 2021, and March 8, 2022, and

was placed into the IMU program on the latter date. He also had "summary denials" of his return

to general population on January 7, 2022, and March 3, 2022.

In response to Defendants' argument, Plaintiff offers only a conclusory statement that he

was "deprived of a protected liberty or property interest and that this deprivation was without due

process." (ECF No. 48 at 6.) Even assuming he has identified a protected liberty or property

interest, Plaintiff has failed to specifically or coherently identify how the procedures available to

him did not provide due process of law.[4]

The due process analysis begins with determining whether the liberty interest asserted is

protected by the Fourteenth Amendment. *Montanez v. Sec'y Dep't Corr.*, 773 F.3d 472, 482-83

(3d Cir. 2014)*.* If it is a protected interest, the court must then determine what process is necessary

to protect it. *Newman v. Beard*, 617 F.3d 775-783 (3d Cir. 2010). If the interest is not protected,

no process is necessary. Thus, as a threshold matter, Plaintiff must plead facts that, if true, establish

that he had a protected liberty interest. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-234

---

[4] Plaintiff alleges that "Defendants 2 to 10 didn't review Plaintiff's (SCS) solitary confinement status placement within 72 hours per DC-ADM 802 policy." (ECF No. 11 ¶ 67.) According to the Complaint, a review took place on September 21, 2021, seven days after the initial decision to place him on AC status. However, any failure to comply with prison policies does not amount to a denial of the required minimal due process. *See Shoats,* 213 F.3d at 147; *United States v. Jiles,* 658 F.2d 194, 200 (3d. Cir. 1981). As noted by the Third Circuit, "the fact that Pennsylvania regulations provide for hearings after transfer to administrative custody is not relevant to a determination of whether federal procedural due process is required." *Griffin,* 112 F.3d at 709 n.3. Thus, even if one or more Defendant deviated from the procedures in the DOC's policies, such deviation was not a *per se* violation of Plaintiff's constitutional right to procedural due process.

(3d Cir. 2006) (finding that when assserting a procedural due process claim, a plaintiff must plead deprivation of a liberty interest to survive a motion to dismiss).

Prisoners do not have the same liberty interests as others. *See Sandin*, 515 U.S. at 485. Incarceration "brings about the necessary withdrawal or limitation on many privileges and rights, a retraction justified by considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Lab. Union*, *Inc.,* 433 U.S.119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which…imposes *atypical and signficant hardship* on the inmate in relation to the ordinary incidents of prison life." *Williams v. Pa. Dep't of Corr.*, 848 F.3d 549, 599 (3d Cir. 2017) (emphasis in original) (quoting *Griffin*, 112 F.3d at 708).

No bright line defines where the duration of segregation becomes atypical. *Williams*, 848 F.3d at 561-62. An inmate sentenced to thirty days in disciplinary confinement does not endure atypical hardship. *See Sandin*, 515 U.S. at 486; *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin*, 515 U.S. at 483-84) (holding that inmates in disciplinary hearings are not entitled to procedural due process because the resulting sanctions do not affect a protected liberty interest). Courts have also held that inmates held in AC for fifteen months do not endure atypical hardship. *Griffin*, 112 F.3d at 708.

There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being placed on AC status. *See Sandin,* 515 U.S. at 484; *Stephany v. Wagner*, 835 F.2d 497, 499 (3d Cir. 1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population"). Thus, Plaintiff's initial placement on AC status did not itself trigger any due process rights as it did not "entail any atypical and significant hardships on [him] beyond the fact of confinement itself." *Bramble v. Wetzel*, 2022 WL 55021, at

*6 (M.D. Pa. 2022) (citing *Smith,* 293 F.3d at 654); *Torres v. Fauver,* 292 F.3d 141, 151-52 (3d Cir. 2002).

However, because it is possible that Plaintiff is asserting a due process claim regarding his continued placement on AC status in the IMU, the Court will analyze this claim as well.

Depriving an incarcerated individual of liberty requires due process protection only if it imposes an "atypical and significant hardship. . . in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. "In determining if a protected liberty interest exists, the court must consider: (1) the duration of the. . .confinement [at issue]; and (2) whether the conditions of confinement were signficantly more restrictive than those imposed upon other inmates in solitary confinement." *Huertas v. Sec'y Pa. Dep't of Corr.,* 533 Fed. Appx. 64, 66 (3d Cir. 2013); *Shoats*, 213 F.3d at 144.

The Court will assume solely for purposes of this analysis that being placed in the IMU on AC status for an unknown period of time but less than two years[5] might implicate a liberty interest. That said, based on the allegations of the Complaint, Plaintiff has failed to provide the requisite level of specificity as to his claim of inadequate due process regarding his continued housing in the IMU. As the Third Circuit has held, due process requirements are met by a periodic review of inmates who are indefinitely confined to administrative custody. *Shoats,* 213 F.3d at 147; *Nifas,* 374 Fed. Appx. at 244-45; *Washington-El v. Beard,* 562 Fed. Appx. 61 (3d Cir. 2014). Plaintiff admits that he participated in some type of review proceeding in September 2021 and March 2022 and was enrolled in the "IMU program" in March 2022.  He further alleges that he only received "summary denials" of returning to general population in January and March 2022. However, a

---

[5] Plaintiff alleges that was placed on AC status in September 2021. He was already housed at SCI Camp Hill when the Complaint was received in September 2023. Defendants assert that Plaintiff was in the IMU for less than six months.

failure to comply with prison policies or discuss certain issues does not amount to a denial of the required minimal due process. *See Shoats,* 213 F.3d at 147; *United States v. Jiles,* 658 F.2d 194, 200 (3d. Cir. 1981).

Based upon these allegations, Plaintiff has failed to adequately allege that his due process rights were violated.

### 2. Equal Protection

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

It is unclear if Plaintiff is asserting an equal protection claim. Defendants argue that, to the extent Plaintiff is raising such a claim, he has not supported this claim with sufficient factual allegations. (ECF No. 26 at 17-18.) Specifically, because he has not alleged that he is a member of a protected class, it is possible that he is alleging that he is a "class of one." To make out an equal protection claim as a "class of one," Plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips*, 515 F.3d at 243.

Here, Plaintiff has not done so. He has not alleged that he was treated differently than others similarly situated. For example, he did not allege that unlike others who received a misconduct

and were deemed to either be a danger to others or in danger, he was placed in administrative custody. Indeed, as he acknowledges, a DOC policy establishes the parameters for AC and the circumstances in which it is imposed. Plaintiff does not allege that others with similar conduct are treated differently or not placed in AC. As such, Plaintiff has failed to allege any facts that could state an equal protection claim.[6]

For these reasons, Plaintiff's Fourteenth Amendment claims will be dismissed.

G. Conspiracy

To support a conspiracy claim under § 1983, a plaintiff must allege sufficient facts from which a conspiratorial agreement to deprive the plaintiff of a constitutional right can be inferred. *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir. 2012); *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must plead specific facts addressing the time the agreement was made, the period of the conspiracy, the parties to the agreement, and the object of the conspiracy). Conclusory allegations of an agreement are insufficient. *Weir v. Univ. of Pittsburgh*, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (finding dismissal of conspiracy claim to be proper where plaintiff made only conclusory statements of the existence of a conspiracy without factual allegation to support that conclusion).

Defendants correctly argue that Plaintiff's conclusory statements referring to a conspiracy are not supported by factual allegations. At a minimum, Plaintiff fails to allege the existence an agreement with the objective of violating his constitutional rights. Moreover, his blanket claim

---

[6] Moreover, Plaintiff's opposition to Defendants' arguments are not responsive to the issue at hand. Rather, Plaintiff provides a description of the views from his cell and a citation to a medical ethics journal on the damaging nature of solitary confinement. (ECF No. 48 at 6-7.) Neither relates in any manner to an equal protection claim.

against all Defendants fails to place each of them on notice of the specific acts in which each allegedly engaged. Thus, he has thus failed to establish a plausible claim of a § 1983 conspiracy and this claim will be dismissed.

     H.  <u>Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")</u>

Under the ADA, no qualified individual with a disability may be excluded from participation in the programs of a public entity by reason of his disability. 42 U.S.C. § 12132. The standard for liability under the RA is the same. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007).

Defendants argue that Plaintiff has failed to allege that he was denied services, programs, or activities on the basis of a disability. (ECF No. 26 at 21.) Defendants are correct. Assuming *arguendo* that Plaintiff has sufficiently alleged that he is a qualified individual with a disability, he has failed to allege that he was excluded from participation in or denied the benefits of some prison service, program, or activity *because of his disability*. Rather, he alleges that he was placed in the IMU due to his AC status, not because of any disability, and  that  based on this placement, the prison services, programs, and activities that were available to him were not the same as those that would be available to him in the general population. As he fails to allege exclusion from prison services by reason of an articulated disability, this claim will be dismissed.

     I.  <u>Insufficient Allegations of Personal Involvement</u>

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g.,*

*id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190

(3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

By his repeated blanket allegations against "all defendants," Plaintiff has failed to identify each defendant's personal involvement in the alleged deprivation of his constitutional or statutory rights. As a result, Plaintiff has failed to adequately state a claim against any of the defendants.

J.   Amendment

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Because Plaintiff cannot circumvent the immunity of Defendants in their official capacities from § 1983 claims, it would be futile to permit amendment in that respect. It would also be futile to permit amendment of Plaintiff's Fourth Amendment and Fifth Amendment claims.

With respect to the remaining claims, the Court cannot conclude that it would be futile or inequitable to permit Plaintiff to file an amended complaint to remedy the other deficiencies identified herein. Any amended complaint must include sufficient facts to support each claim asserted and must also specifically describe the involvement of each defendant regarding each claim rather than blanket allegations as to "all defendants."

**V.   Conclusion**

For these reasons, Defendants' Motion to Dismiss filed, ECF No. 25, will be:

1.   Granted with prejudice with respect to the § 1983 claims against Defendants in their official capacities.

    2.       Granted with prejudice with respect to the claims under the Fourth and Fifth Amendments.

    2.       Granted without prejudice as to all other claims and defendants.

An appropriate Order follows.


Dated:  September 27, 2024            <u>/s/ Patricia L. Dodge</u>
                                        PATRICIA L. DODGE
                                        United States Magistrate Judge